UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
JUN 06 2013
PER ___ DEPUTY CLERK

| | | |
|---|---|---|
| JAMES FLORES, | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. 3:CV-12-1149 |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | (Judge Kosik) |
| Defendants | : | |

**MEMORANDUM**

Several opinions have recently been issued in the above civil rights action filed pursuant to 42 U.S.C. § 1983 by James Flores with respect to motions pending in this matter. Flores is a state inmate currently held at the State Correctional Institution at Rockview ("SCI-Rockview"), Pennsylvania. The case proceeds on an amended complaint and concerns the lack of adequate eye care in violation of the Eighth Amendment, denial of equal protection, and several state law claims. Named as Defendants in the caption of the amended complaint are the Pennsylvania Department of Corrections and the following SCI-Rockview employees: John Wetzel, Superintendent; Marirosa Lamas, Facility Manager; and W. Ted Williams, Health Care Administrator. Also named as Defendants are Dr. Sanders and K. Miller.[1]

[1] Mark Sanders, O.D., appears to be a private optometrist who periodically provides services to inmates at SCI-Rockview. He is represented by private counsel

Presently pending before the court are three (3) separate motions to dismiss filed by various defendants. In this Memorandum, the court will address the motions filed on behalf of Defendant Corizon (Doc. 21) and the Corrections Defendants (Wetzel, Lamas and Williams.) The motion to dismiss filed by Defendant Sanders (Doc. 44) will be addressed in a separate Memorandum. For the reasons that follow, the motions will be granted.

## I. Allegations in the amended complaint

In July of 2011, Plaintiff states that he went to sick call in the infirmary at SCI-Rockview to have his trifocal glasses repaired. The glasses were previously owned by Plaintiff prior to his incarceration at SCI-Rockview. He was told by some unidentified person that he would be scheduled for treatment. On November 11, 2011, Plaintiff again attended sick call and spoke to Defendant Miller. Miller informed him that only glasses issued by the Department of Corrections will be repaired. Because Flores could not see without his glasses, he signed up for prison-issued glasses. He states that he wrote to Defendant Williams so he would not have to wait, and that Williams forwarded his request to Miller. Miller thereafter fabricated a statement that Plaintiff refused DOC-issued glasses. Plaintiff disputes

---

in this matter. Defendant K. Miller has not been served with the complaint in this action. Service was returned unexecuted on November 1, 2012, with a notation that no forwarding address was available. It is unclear if K. Miller is a DOC employee. Plaintiff shall notify the court within fourteen (14) days of a new address where K. Miller can be served with the standing complaint in this action. The failure to do so will result in the dismissal of this defendant from the action.

any such refusal, and claims that if such were the case, he would have been required to sign a DC-462 form. Plaintiff thereafter filed a grievance against Miller based upon this incident because he had gone several months without glasses.

In response to the correspondence written to him by Plaintiff, Williams informed Plaintiff that he was seen in May of 2010, and did not want glasses. He was then told to fill out a new request slip. Plaintiff states that he did so, as well as file an appeal of Williams' response to Defendant Lamas. In the appeal, Plaintiff stated that he tried to go through sick call to remedy his issue, and that he is unable to see and has fallen.

On January 26, 2012, Plaintiff went back to sick call as instructed, and on January 28, 2012, was seen by Defendant Miller. On this occasion, Miller informed Plaintiff that he never scheduled him for a vision screening because he is not concerned about him. Plaintiff states he thereafter filed a grievance on this same date against Miller (#3995690).

On January 31, 2012, Plaintiff mailed an informal complaint to Defendant Wetzel and other DOC officials with respect to the delay in treatment for his vision. On February 6, 2012, Defendant Lamas responded to the grievances and upheld and condoned the actions of Miller and Williams. On February 8, 2012, Plaintiff states he went to a vision screening where an eye chart test was conducted by "Vicki" who informed him that there is an optometrist at the prison approximately once per month

and who had been at the prison in December. Further, in response to grievance #399569, Defendant Williams informed Plaintiff that he failed his vision screening and needed to be seen by an optometrist.

Plaintiff states that on April 10, 2012, he spoke to Defendant Wetzel. Wetzel admitted receiving Plaintiff's earlier correspondence and informed Plaintiff that he forwarded his complaints to the Chief Counsel's Office. On this occasion, Plaintiff states he also informed Wetzel that he had fallen because of his eyesight. Plaintiff argues that at this point he had gone 12 months without glasses because Defendants Wetzel, Lamas and Williams failed to supervise and oversee Defendant Miller's conduct and condoned their actions.

On an unspecified date thereafter, Plaintiff states he arrived at the SCI-Rockview Medical Department for a scheduled appointment with Defendant Sanders. Sanders informed him that trifocals would not be ordered because the DOC does not permit it. Plaintiff contends that this is contrary to DC ADM 13.21.8(1). This response from Plaintiff caused Sanders to become irritated and to terminate the appointment. Sanders also informed Plaintiff that he could tell the nurse when he has picked out his frames. According to Plaintiff, this was a delegation of duty by Sanders to an inferior person. Sanders also failed to do anything about Plaintiff's complaint of headaches because he said he was not there for that purpose.

Plaintiff further alleges that Defendant Corizon employs doctors and

encourages the least cost effective means to treat inmates and failed to oversee Sanders. He further alleges Corizon does not enforce policies of quality care. Plaintiff claims he waited irregular lengths of time to receive his glasses and submits declarations from other inmates with respect to this issue.

Plaintiff filed a grievance against Sanders (#409017) and exhausted the grievance. It was upheld by Williams, who agreed with Plaintiff, and rescheduled him for another appointment with Sanders. The new appointment was held on May 24, 2012. Plaintiff states that because he filed a grievance against Sanders, Sanders threatened him by saying that filing a grievance is the wrong way to get his glasses. At the time of the filing of the amended complaint, Plaintiff still had not received his glasses.

## II. Motion to Dismiss Standard

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(quoting Conley v. Gibson, 355 U.S. 41,47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

A defendant may attack a complaint by a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to

dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 570)(explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); see also Phillips, 515 F.3d at 234; Victaulic Co v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007); Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public

record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Ci. 2002)(citation omitted); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002)("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged, as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Youse v. Carlucci, 867 F.Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551

U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III. Discussion

### A. Corizon's Motion to Dismiss

In the complaint, Plaintiff names "Corizon" as a Defendant. Corizon, the entity that provides medical professionals to SCI-Rockview, seeks dismissal of the claims set forth in the complaint against them based on Plaintiff's failure to state a federal claim. For the following reasons, the court will grant the motion to dismiss as to Corizon.

A private health care provider acting under color of state law, such as Corizon, can be held liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners. See Monell v. Depot of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Thomas v. Zinkel, 155

F.Supp.2d 408, 412 (E.D. Pa. 2001). Such liability cannot rest on respondeat superior alone, but instead must be based on some policy, practice, or custom within the institution that caused the injury. See Thomas, 155 F.Supp.2d at 412. Moreover, mere identification of a policy or custom is not enough to establish liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the health care provider's custom or policy and the constitutional deprivation at issue. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). As such, there is no liability for the alleged misconduct of employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of respondeat superior. Monell, 436 U.S. at 691.

For purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. See Andres v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990); Unterberg v. Corr. Med. Sys., Inc., 799 F.Supp. 490, 497-98 (E.D. Pa. 1992). A custom on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz, 915 F.2d at 850. As a result, custom can be established by "proof of knowledge and acquiescence," Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989); Unterberg, 799 F.Supp. at 498. Under the Estelle

deliberate indifference test, deliberate indifference can be shown in the instant case, for example, if there is an established policy or custom that caused Corizon to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed. See Estelle, 429 U.S. a 104-05; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

In the instant case, Plaintiff has not alleged the existence of any policy or custom attributable to Corizon with respect to his eye care that deprived him of his federal constitutional rights. In the complaint, he generally asserts that Corizon employed doctors and encouraged the least cost effective means to treat inmates, failed to oversee Dr. Sanders, and failed to enforce policies of quality care. However, in reviewing the complaint, there is no allegation that Dr. Sanders was a contract employee of Corizon. The complaint also lacks any facts to support Plaintiff's general conclusory statements that inadequate methods of treatment were utilized for the mere purpose of saving money or facts establishing what customs or policies existed demonstrating Corizon's failure to provide quality care. Instead, it is clear that Plaintiff seeks to impose liability on Corizon solely as the entity responsible for providing health care to the population at SCI-Rockview and as the employer of any individuals that may have allegedly failed to provide adequate health care.[2]

---

[2] At this point, it is even unclear whether any of the named Defendants are alleged to be employees of Corizon.

Accordingly, the court will dismiss the federal claims raised in the complaint against Corizon and will not exercise supplemental jurisdiction over any of the state claims raised against said Defendant.

**B. Corrections Defendants**

A motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) has also been filed on behalf of Corrections Defendants Wetzel, Lamas and Williams. (Doc. 25.) Defendants first argue that any federal claims against the Pennsylvania Department of Corrections should be dismissed in that the DOC is not a person for purposes of 42 U.S.C. § 1983. While Defendants' argument is well-taken, see Will v. Michigan Dept. Of State Police, 491 U.S. 58, 109 S.Ct. 2304 (1989), the court need not evaluate this claim in that in his opposition brief, Plaintiff confirms that he is not naming the DOC as a defendant in the amended complaint.

Defendants next maintain that all claims against them in their official capacities should be dismissed in that claims for money damages against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. See 42 Pa. Cons. Stat. Ann. § 8521(b); see also Laskaris v. Thornburgh, 661 F.2d 23, 25

(3d Cir. 1981). The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Garden State Elec. Inspection Servs. v. Levin, 144 F. App's 247, 151 (3d Cir. 2005)(quoting Will v. Mich. Depot of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). In Will, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted. Will, 491 U.S. at 64. However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual capacity. Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002). Accordingly, Plaintiff's claims for money damages against the DOC Defendants in their official capacities will be dismissed. To the extent that Plaintiff has brought § 1983 claims against Defendants in their individual capacities, however, those claims remain viable and will be addressed by the court herein.

To the extent Plaintiff raises claims of falsification of business records, negligent infliction of emotional distress and corporate negligence, his claims are subject to dismissal for the following reasons. First, because there is no federally protected right against false statements made in state documents, Plaintiff has no cognizable claim under § 1983 with respect to any allegation that false statements

were contained in his prison records. To the extent he seeks to impose liability upon the Corrections Defendants for the negligent infliction of emotional distress and/or corporate negligence, Defendants are protected by sovereign immunity. The Commonwealth enjoys immunity from suit except where the General Assembly specifically waives that immunity. See 1 Pa C.S.A. § 2310. Pursuant to statute, Pennsylvania has waived sovereign immunity only in 9 specific areas where the damages sought arise out of a negligent act, none of which encompass the allegations set forth in the instant complaint. See 42 Pa. C.S.A. § 8522.

Plaintiff also alleges claims against the Corrections Defendants under the Eighth Amendment. A constitutional violation under the Eighth Amendment in the medical context occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of

reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that mere misdiagnosis of a condition or negligent treatment provided for a condition, is not actionable under the Eighth Amendment because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. Deliberate indifference is generally not found when some significant level of medical care has been offered to an inmate, see Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997), or where claims are based upon the level of professional care that an inmate has received, see Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Liability may not be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement may be shown by alleging facts sufficient to show: (1) actual participation in the misconduct, (2) knowledge of and acquiescence in the misconduct, or (3) circumstances in which inaction sends a message of approval of the misconduct. Chinchello v. Fenton, 805

F.2d 126 (3d Cir. 1986). Allegations regarding participation or actual knowledge and acquiescence must be made with appropriate particularity. Id.

Prison officials, who are not physicians, cannot be considered deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by medical personnel of the prison. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Further, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See Rode, 845 F.2d at 1208(finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement). Allegations that prison officials and administrators responded unfavorably to an inmate's later filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation. See Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

The court will first address Plaintiff's claims against Defendant Lamas. The only allegations against Lamas are with respect to her responses to grievance appeals filed by Plaintiff. Plaintiff states that Lamas upheld and condoned the actions of Defendants Miller and Williams. Lamas' denial of any appeals from grievances filed by Plaintiff do not establish the requisite personal involvement necessary with respect to the violations alleged by Plaintiff. Further, Lamas is not a physician and cannot be held responsible for failing to take further action with respect to any medical

complaint made by Lamas, particularly in light of the fact that the complaint establishes that Plaintiff was being seen by medical staff just one (1) week prior to Lamas' denial of the grievance appeals and again within several days thereafter.[3] As such, Plaintiff fails to state a claim with respect to Defendant Lamas.

The same is true with respect to Defendant Wetzel. In the amended complaint, the only claims set forth against Wetzel are that Flores mailed him an informal complaint on January 31, 2012 with respect to the delay in treatment regarding his vision, and that he spoke with Wetzel on April 10, 2012. With respect to the conversation on April 10, 2012, Wetzel acknowledged receiving the January 31, 2012 correspondence and informed Flores that he had forwarded his complaint to the Chief Counsel's Office. Flores admits receiving an eye screening one week after writing to Wetzel and was also seen by a physician after speaking with Wetzel in April. Based on the foregoing, Wetzel as a non-physician cannot be considered deliberately indifferent if he failed to respond to Flores' complaints. However, in light of the allegations in the complaint, it appears that Wetzel did respond to the complaints and that Flores was provided with treatment by medical personnel.

The claims set forth against Defendant Williams amount to nothing more than

---

[3] In the complaint, Plaintiff alleges that on February 6, 2012, Lamas responded unfavorably to the grievance appeals with respect to the actions of Miller and Williams. He also admits he was seen in medical by Defendant Miller on January 28, 2012, and also provided with a vision screening and eye chart test on February 8, 2012.

Flores' dissatisfaction with how Williams responded to his complaints and grievances. As previously stated, such allegations do not rise to the level of a constitutional claim. Furthermore, in reviewing the amended complaint, Flores admits that Williams did forward his request for prison-issued glasses to Defendant Miller and later informed him that he failed his vision test and would need to see an optometrist. Williams also later upheld a grievance Flores filed against Defendant Sanders and rescheduled him for another appointment with Sanders. Based on the foregoing, Flores fails to state any claim with respect to Williams. In addition, the court will not exercise supplemental jurisdiction over any remaining state claims raised against these Corrections Defendants. An appropriate order follows.